1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEBRA RAY, | ) | CV F 04 6173 SMS |
| | ) | |
|          Plaintiff, | ) | DECISION AND ORDER DENYING |
| | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
|   v. | ) | |
| | ) | ORDER DIRECTING THE ENTRY OF |
| JO ANNE B. BARNHART, | ) | JUDGMENT FOR DEFENDANT JO ANNE B. |
| Commissioner of Social | ) | BARNHART, COMMISSIONER OF SOCIAL |
| Security, | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | DEBRA RAY |
|         Defendant. | ) | |
| | ) | |
| _____ | ) | |

        Plaintiff is proceeding with counsel and is seeking judicial
review of a final decision of the Commissioner of Social Security
(Commissioner) denying an application for benefits. By order
dated February 15, 2005, Judge Robert E. Coyle reassigned this
case to the undersigned Magistrate Judge because both parties had
consented to the Magistrate's jurisdiction to conduct all
proceedings, including ordering the entry of judgment, pursuant
to 28 U.S.C. § 636(c). The matter is currently before the Court
on the parties' briefs, which have been submitted without oral
argument.

<u>PROCEDURAL HISTORY</u>

A prior application filed in March 1999 for SSI payments was denied by a decision after a hearing on January 8, 2000; the Appeals Council denied review. (Tr. 36-50, 20.) The decision was that Plaintiff had a residual functional capacity (RFC) for sedentary work with postural imitations and pulmonary precautions but was not disabled. The ALJ who wrote the decision under review here expressly stated that pursuant to res judicata, he would not consider a disability onset date before January 8, 2001, although this issue was moot because the date of the application before him was February 4, 2002. (Tr. 20-21.)[1]

On February 4, 2002, Plaintiff applied for Supplemental Security Income (SSI), alleging disability since January 1, 1991, due to asthma, arthritic knees, and limitations on breathing, walking, and sitting long term. (Tr. 85-87, 97.) After Plaintiff's claim was denied initially and on reconsideration (Tr. 51-64), Plaintiff requested, and appeared at, a hearing before the Honorable Michael Haubner, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), on July 8, 2003. Plaintiff appeared with an attorney and testified; a vocational expert (VE) also testified. (Tr. 268-302.) On September 25, 2003, the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 20-27.) Plaintiff appealed the ALJ's decision to the Appeals Council. After the Appeals Council denied Plaintiff's request for review on July 30, 2004, Plaintiff filed

---

[1] Pursuant to 20 C.F.R. § 416.335, SSI benefits are not payable for any months before an application is filed.

Further, all citations to the Code of Federal Regulations is to the 2003 version unless otherwise stated.

1  the complaint in this action on August 27, 2004. (Id. at 5-8.)

2  Briefing commenced on August 4, 2005, and was completed with the

3  filing on October 4, 2005, of Defendant's opposition.

4                     SCOPE AND STANDARD OF REVIEW

5       Congress has provided a limited scope of judicial review of

6  the Commissioner's decision to deny benefits under the Act. In

7  reviewing findings of fact with respect to such determinations,

8  the Court must determine whether the decision of the Commissioner

9  is supported by substantial evidence. 42 U.S.C. § 405(g).

10 Substantial evidence means "more than a mere scintilla,"

11 Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

12 preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

13 (9th Cir. 1975). It is "such relevant evidence as a reasonable

14 mind might accept as adequate to support a conclusion."

15 Richardson, 402 U.S. at 401. The Court must consider the record

16 as a whole, weighing both the evidence that supports and the

17 evidence that detracts from the Commissioner's conclusion; it may

18 not simply isolate a portion of evidence that supports the

19 decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

20 It is immaterial that the evidence would support a finding

21 contrary to that reached by the Commissioner; the determination

22 of the Commissioner as to a factual matter will stand if

23 supported by substantial evidence because it is the

24 Commissioner's job, and not the Court's, to resolve conflicts in

25 the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th

26 Cir. 1975).

27      In weighing the evidence and making findings, the

28 Commissioner must apply the proper legal standards. Burkhart v.

Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
review the whole record and uphold the Commissioner's
determination that the claimant is not disabled if the
Commissioner applied the proper legal standards, and if the
Commissioner's findings are supported by substantial evidence.
See, Sanchez v. Secretary of Health and Human Services, 812 F.2d
509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If
the Court concludes that the ALJ did not use the proper legal
standard, the matter will be remanded to permit application of
the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th
Cir. 1987).

ANALYSIS

I. Disability

    A. Legal Standard

In order to qualify for benefits, a claimant must establish
that she is unable to engage in substantial gainful activity due
to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of
not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
claimant must demonstrate a physical or mental impairment of such
severity that the claimant is not only unable to do the
claimant's previous work, but cannot, considering age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy. 42 U.S.C.
1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
Cir. 1989). The burden of establishing a disability is initially
on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts

4

to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.

## B. The ALJ's Findings

Here, the ALJ found that the prior unfavorable adjudication created an ongoing presumption that Plaintiff was not disabled; Plaintiff's attainment of age 45 advanced her to a different vocational category, and thus the Chavez rule was not to be automatically applied. However, the new evidence did not

establish that Plaintiff's condition had substantially worsened
since January 8, 2001. Plaintiff suffered from severe status
post-left knee arthroscopic surgery with degenerative
chondromalacia but non-severe asthma that was controlled by
medication, controlled hypertension, fibromyalgia without trigger
points, and CTS right forearm and wrist alleviated by a splint
and not supported by examination findings or electrodiagnostic
studies, which had not lasted, and could not be reasonably
expected to last, for twelve months. Plaintiff's knee condition
did not meet or equal a listing. Plaintiff retained the RFC to
perform limited sedentary work, occasionally to lift ten and
frequently to lift and carry up to less than ten pounds, sit six
hours, stand or walk two hours in an eight-hour day with the use
of knee stabilizers for ambulation; Plaintiff could perform no
frequent forceful pushing or pulling with her lower extremities,
no climbing of ladders or scaffolding, only occasional climbing
of stairs, stooping, crouching, balancing, kneeling, and
crawling; and Plaintiff could not experience concentrated
exposure to uneven terrain, and not even moderate exposure to
pulmonary irritants. However, pursuant to vocational testimony,
Plaintiff remained capable of performing a wide range of
unskilled work, including jobs existing in significant numbers in
the national economy. Thus, pursuant to Rule 201.21, she was not
disabled.  (Tr. 21-22, 26.)

    II. Multiple Impairments and Severity of Impairments

          A. Legal Standards

     At step two, the Secretary considers if claimant has "an
impairment or combination of impairments which significantly

limits his physical or mental ability to do basic work

activities." 20 C.F.R. § 416.920(c). This is referred to as the

"severity" requirement and does not involve consideration of the

claimant's age, education, or work experience. Id. The Secretary

is required to "consider the combined effect of all of the

individual's impairments without regard to whether any such

impairment, if considered separately, would be of [sufficient

medical] severity." 42 U.S.C. § 1382c(a)(3)(F).

Basic work activities include the abilities and aptitudes

necessary to do most jobs, such as physical functions of walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying,

or handling; capacities for seeing, hearing, and speaking;

understanding, carrying out, and remembering simple instructions;

use of judgment; responding appropriately to supervision, co-

workers and usual work situations; and dealing with changes in a

routine work setting. 20 C.F.R. § 416.921(b).

An impairment or combination thereof is not severe when

medical evidence establishes only a slight abnormality or a

combination of slight abnormalities which would have no more than

a minimal effect on an individual's ability to work. An

impairment is not severe if it does not significantly limit a

claimant's physical or mental ability to do basic work

activities. 20 C.F.R. § 416.921(a); Soc. Sec. Ruling 85-28;

Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996). ____

_____In determining whether an individual's impairments are of

sufficient medical severity that they could be the basis of

eligibility for benefits, the Commissioner shall consider the

combined effect of all the individual's impairments without

7

1   regard to whether any such impairment, if considered separately,

2   would be of such severity. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§

3   404.1545(e), 416.945(3); Soc. Sec. Ruling 96-8p. The ALJ is

4   responsible for determining the effect of an impairment upon the

5   other impairments and its effect on the claimant's ability to

6   work and general health. Celaya v. Halter, 332 F.3d 1177, 1182

7   (9th Cir. 2003). An ALJ must adequately explain his evaluation of

8   the combined effects of impairments. Marcia v. Sullivan, 900 F.2d

9   172, 176 (9th Cir. 1990).

10      Plaintiff has the burden to produce sufficient evidence that

11   he or she actually suffers from an impairment, or else it need

12   not be factored in to a disability analysis. Macri v. Chater, 93

13   F.3d 540, 544 (9th Cir. 1996). Where the evidence is not

14   sufficient to suggest that a claimant suffered multiple

15   impairments, or a combination thereof, then it is not error to

16   fail to do a multiple impairment analysis. Macri v. Chater, 93

17   F.3d 540, 545 (9th Cir. 1996) (where the evidence did not

18   establish that medication for a claimed impairment was prescribed

19   during the claimant's period of disability insurance covered

20   status). The Ninth Circuit has cautioned that despite its holding

21   in Celaya v. Barnhart, 332 F.3d 1177, 1181 (9th Cir. 2003), it

22   remains the burden of a claimant to furnish evidence that her

23   impairments, in combination, caused functional limitations. Burch

24   v. Barnhart, 400 F.3d 676, 681-83 (9th Cir. 2005).

25      B. Analysis

26      Plaintiff contends that there was substantial evidence

27   supporting a finding that other impairments, singly or in

28   combination, were severe. However, it is not for this Court to

1  determine if substantial evidence would have supported findings
2  different from those made by the ALJ; rather, the question is
3  whether viewing the entire record, substantial evidence supported
4  the ALJ's legally correct analysis. It is up to the ALJ initially
5  to weigh and interpret the evidence and to resolve any conflicts
6  and ambiguities. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th
7  Cir. 1975).

8      After identifying Plaintiff's severe left knee or knee
9  impairments, the ALJ addressed several conditions and the reasons
10  why they did not qualify as disabling. (Tr. 21-23.)

11     Substantial evidence supports a finding that Plaintiff's
12  ankle injury was not severe, either singly or in combination with
13  other impairments. (Tr. 22-23.) Although there was an injury of
14  the ankle in May 2003 resulting from a fall, the record contains
15  substantial evidence, relied on by the ALJ, that x-rays showed no
16  fracture, dislocation, or significant abnormality in the left
17  ankle; and Plaintiff was ambulatory and weight-bearing despite
18  some swelling, which was reduced, by June 2003, when she was
19  treated for a sprain with rest, ice and Ibuprofen. (Tr. 215.)
20  Further, treating physician Dr. Kuo gave Plaintiff a good
21  prognosis for left ankle function in June 2003 despite swelling.
22  (Tr. 22, 215-20, 236.) Plaintiff points to no evidence, and the
23  Court is aware of none (with the exception of Plaintiff's
24  subjective complaints), that would render the ALJ's conclusion
25  unsupported.

26     Substantial evidence supports the ALJ's finding that
27  Plaintiff's asthma was not severe because controlled by
28  medication (Tr. 21), including treatment records showing that

9

Plaintiff's asthma was stable and controlled (Tr. 158 [April 2002], 225 [March 2003]); that an inhaler and Flonase were continued as treatment in April 2003 for seasonal allergies and asthma (Tr. 224); and the opinion of treating physician Dr. Kuo that although Plaintiff suffered from asthma, she had what amounted to a sedentary RFC and had unspecified environmental restrictions due to a history of asthma with respect to chemicals, dust, and fumes. (Tr. 236-40.) Plaintiff testified that she used inhalers but not a nebulizer, had not ever been hospitalized overnight for breathing problems, had no oxygen at home, had not been instructed by a physician to have a breathing test, and had not undergone a pulmonary function test since 1990. (Tr. 278-79.) The Court further notes that the ALJ's RFC provided for pulmonary restrictions.

Substantial evidence supported the ALJ's conclusion that any carpal tunnel syndrome (CTS) suffered by Plaintiff was not severe. Notes of treatment at Community Medical Centers (CMC) in February 2003 indicated that Plaintiff had right arm pain for four days with numbness to the finger; she was given Prednisone for five days and was able to sleep with pain reduced to a level of four to five out of ten; her motor strength was 5/5 bilaterally, and sensory impression to light touch was intact; injections were considered for the future if Plaintiff obtained no relief with Celebrex. (Tr. 231-35.) In March 2003 she was given a diagnosis of likely CTS, and a wrist splint was prescribed. (Tr. 226.) Eight days later Plaintiff reported that the splint helped a lot, and she wanted to wear it all the time. (Tr. 226.) By March 17, 2003, progress notes indicated that

1 Plaintiff's CTS was controlled with braces and splints. (Tr.

2 225.) The splint was continued in April 2003. (Tr. 224.) The

3 evidence thus supports the ALJ's findings (Tr. 21-22) that the

4 diagnosis was possible CTS because of right elbow and shoulder

5 pain and further right forearm and wrist pains, and that the

6 splint alleviated the symptoms. Plaintiff does not cite any

7 contradictory or countervailing evidence.

8     Similarly, substantial evidence supports the ALJ's finding

9 that Plaintiff's symptoms of fibromyalgia were non-severe. (Tr.

10 21.) The ALJ stated:

11 > In February 2003 the claimant was diagnosed with
> possible fibromyalgia because of right elbow and shoulder
12 > pain and in March 2003 with carpal tunnel syndrome (CTS)
> based on further right forearm and wrist pains; the claimant
13 > was prescribed a wrist splint, which alleviated the
> symptoms. I find that the claimant's symptoms of
14 > fibromyalgia and CTS are non-severe. The treating record
> does not contain specific findings showing that the
15 > claimant had trigger points, which would support a diagnosis
> of fibromyalgia. The diagnosis of CTS is not supported
16 > by examination findings or electrodiagnostic studies.
> Further, these impairments have not lasted 12 months, and
17 > since their diagnosis is based on the claimant's
> complaints, rather than objective evidence, continuation
18 > for 12 months cannot reasonably be projected.

19 (Tr. 21.) The record contains evidence supporting this assessment

20 of the duration of Plaintiff's impairments. Further, fibromyalgia

21 was mentioned in treatment notes recording Plaintiff's subjective

22 complaints of pain as distinct from any findings concerning

23 precise trigger points (Tr. 231, 224-25); and the diagnosis in

24 March 2003 was possible ("Pos") fibromyalgia (Tr. 225). The

25 record does not contain any findings regarding trigger points at

26 that time. Dr. Kuo concluded that despite her history of

27 fibromyalgia, Plaintiff could frequently lift and carry up to

28 twenty pounds, sit for eight hours, and stand and/or walk four

hours with breaks and at intervals. No limitations other than her standing/walking and lifting were expressly imposed because of fibromyalgia. (Tr. 236-41.)

In a clarification in response to the ALJ's request for more information (Tr. 271-72), Dr. Dizon signed a statement that purported to be from Dr. Kuo, which referred to fibromyalgia as one of Plaintiff's impairments and stated that clinical examination had demonstrated tender points, occasional swelling, decreased motion, and subjective pain. (Tr. 241.) However, the record supports the ALJ's conclusion (Tr. 24) that Dr. Kuo had seen Plaintiff only twice in two years and that Kuo failed to mention how many trigger points were present and whether the requisite number were present. As the ALJ concluded, Plaintiff was not found to have had the required tender spots at 11 of 18 locations on the body in order for there to be a diagnosis of fibromyalgia. See, Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001). Likewise, as analysis set forth in a later portion of this order will demonstrate, substantial evidence supported the ALJ's rejection of Plaintiff's credibility and thus of her subjective complaints. (Tr. 24.)

As to Plaintiff's status post hernia surgery, the ALJ noted that Plaintiff had surgery to repair a left inguinal hernia in May 2002 and to remove an enlarged lymph node which was not malignant. After several days of treatment of a secondary infection at the site of the surgery, Plaintiff was discharged. (Tr. 22, 176-94.) There is no evidence that this condition persisted or was reasonably anticipated to persist for the required duration of 12 months, and thus substantial evidence

1   supports the conclusion that Plaintiff's hernia condition was
2   transitory and did not affect her ability to work to the extent
3   required in order for it to be considered to be severe.

4        With respect to these impairments, as will be discussed
5   below, there was substantial evidence, consisting of expert
6   opinions, supporting the ALJ's finding that Plaintiff was not
7   precluded from work by these impairments.

8        Accordingly, it is concluded that substantial evidence
9   supports the finding that Plaintiff's other impairments were not
10  severe. Further, the ALJ considered and discussed all of
11  Plaintiff's impairments.

12       III. RFC and Expert Opinions

13       Plaintiff argues that the ALJ's RFC was not supported by
14  substantial evidence.

15       Social Security regulations define residual functional
16  capacity as the "maximum degree to which the individual retains
17  the capacity for sustained performance of the physical-mental
18  requirements of jobs." Reddick v. Chater, 157 F.3d 715, 724 (9th
19  Cir. 1998) (citing 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c)
20  and Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)). The
21  Commissioner must evaluate the claimant's "ability to work on a
22  sustained basis." Id. (citing 20 C.F.R. § 404.1512(a)); Lester,
23  81 F.3d at 833); see 20 C.F.R. § 416.945. A "regular and
24  continuing basis" means eight hours a day, five days a week, or
25  an equivalent work schedule. S.S.R. 96-8p at 1, 2. The process
26  involves an assessment of physical abilities and then of the
27  nature and extent of physical limitations with respect to the
28  ability to engage in work activity on a regular and continuing

13

1  basis. 20 C.F.R. § 404.1545(b). Occasional symptom-free periods
2  and even the sporadic ability to work are not inconsistent with
3  disability. Reddick v. Chater, 157 F.3d at 724.

4      Plaintiff argues that the ALJ credited the evidence
5  supporting a denial of benefits and failed to credit evidence
6  supporting an award of benefits. Again, the Court clarifies that
7  it is initially up to the ALJ to interpret ambiguous evidence and
8  to resolve conflicts in the evidence. The question to be answered
9  on review before this Court is whether or not in light of the
10 whole record the ALJ's findings were supported by substantial
11 evidence.

12     There is no merit to Plaintiff's contention that the ALJ
13 failed to include the limitation that Plaintiff required knee
14 stablizers for ambulation. In making his finding regarding
15 Plaintiff's RFC, the ALJ expressly stated that Plaintiff had to
16 use knee stabilizers for ambulation. (Tr. 22, 27.)

17     Plaintiff next states that the ALJ misrepresented that there
18 was no dysfunction of weight-bearing joints. Plaintiff's counsel
19 did not assist the Court with a citation to the record to explain
20 precisely to what portion of the seven-page decision she was
21 referring, but it appears that Plaintiff is referring to the
22 following statement:

23         The claimant does not have any impairment or combination
           of impairments meeting or equaling the criteria under
24         any section of Appendix 1, Subpart P, Regulations No. 4,
           including section 1.02A pertaining to dysfunction of
25         a major weight-bearing joint. The claimant does not have
           gross anatomical deformity of her knee joints, though
26         she does have chronic pain and limited range of movement.
           She must use knee stabilizers to walk or stand, but is
27         able to ambulate effectively without an assistive device.

28 (Tr. 21.) The ALJ then proceeded to state Plaintiff's RFC. (Tr.

21-22.) It appears that the challenged statement relates not to RFC, but rather to a preceding stage of the disability analysis, namely, step three, at which it is determined whether solely on the basis of medical evidence an impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations.

Plaintiff asserts that this statement is obvious error because Plaintiff suffered tenderness, swelling, decreased, motion, effusion, and crepitus. The ALJ noted these symptoms in discussing Dr. Nareddy's consultative examination of May 2002. (Tr. 23.) However, Plaintiff has not established that swelling, subjective tenderness, decreased motion, effusion of unidentified material, and a sound of friction are sufficient to establish major dysfunction of a joint.

Further, the ALJ's reference appears to relate to the definition of major dysfunction of joints due to any cause stated in Appendix 1, Subpart P, Regulations No. 4, § 1.02A, which states:

> 1.02 *Major dysfunction of a joint(s) due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>     A. Involvement of one major peripheral weight-bearing joint (i.e.j, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b....

The ALJ noted that despite Plaintiff's symptoms of crepitus, effusion, and synovial and soft tissue swelling in both knees (Tr. 138-39), there was no patellar instability according to Dr.

Nareddy's consultative internal medicine exam of Plaintiff in May 2002. Further, the ALJ noted that Plaintiff had normal strength and reflexes in her lower extremities, did not have any neurological deficits, and could walk slowly. (Tr. 23.) Finally, the ALJ noted that Plaintiff's advanced osteoarthritis of the knees was diagnosed by rheumatologist Dr. R. Bertken as being stable in April 2002. (Tr. 22, 128.)

It is Plaintiff's burden to establish that his impairment met a listing. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability; there must also be the findings required in the listing. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally, specific medical findings are needed to support the diagnosis and the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d), 416.925(c). The Commissioner is not required to state why a claimant failed to satisfy every different section of the listing of impairments; rather, it is sufficient to evaluate the evidence upon which the ultimate factual conclusions are based. Otherwise, an undue burden would be put on the social security disability process. Gonzales v. Sullivan, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

Accordingly, it is concluded that substantial evidence supported the ALJ's finding at step three that there was no dysfunction of weight-bearing joints sufficient to meet the requirement of the listing.

Although as previously noted Plaintiff's argument goes to step three, it should further be noted that the ALJ imposed

significant limitations on Plaintiff's use of her lower extremities, which will be further discussed in connection with the ALJ's treatment of the expert opinions.

Plaintiff complains that the ALJ did not state adequate reasons for his rejection of consulting examiner Nareddy's limitation of only occasional lifting up to five pounds. The ALJ evaluated Dr. Nareddy's opinion as follows:

> Substantial weight is given to the May 2002 consultative examination, but not to the examiner's conclusion that the claimant could lift no more than 5 pounds occasionally. This appears to be based on uncritical acceptance of the claimant's allegations, and is not supported by the examiner's own findings, or by the treating records. For instance, although the claimant alleged biweekly exacerbations of asthma, the treating record shows only occasional treatment for bronchitis. The claimant is not prescribed oxygen or a nebulizer, which suggests that she was exaggerating the frequency and severity of her asthma symptoms. Very substantial weight is given to the opinions of the state agency analyst and reviewing medical consultant that the claimant could perform sedentary work, with some limitations in the use of her lower extremities for pushing, pulling, and standing or walking on uneven terrain, and with pulmonary precautions (Exhibits 4F; 8F).

(Tr. 24.)

Reference to Dr. Nareddy's opinion (Tr. 135-39) reveals that his information regarding the nature and severity of Plaintiff's asthma symptoms came from Plaintiff's reporting to him about those symptoms. (Tr. 135.) The clinical exam revealed a few wheezes bilaterally but otherwise air was moved "okay." (Tr. 137.) Likewise, fairly read, the record supports the ALJ's characterization of Dr. Nareddy's opinion regarding the extent of her limitations from her knee problems as coming primarily from Plaintiff's subjective complaints or subjective responses, such as fear of doing back range of motion because of a belief that

her knees would give out, severity of pain with movement, inability to flex her hips because of knee pain, or to walk on heels or toes. (Tr. 135, 138-39.) Dr. Nareddy found that there was crepitus, swelling, and effusion; Plaintiff's knee flexion was sixty out of 130 degrees and extension was 160 out of 180 degrees with very tender range of motion; but there was no patellar instability. Nevertheless, the extent of Plaintiff's abilities seems to have been based in large part on her representation of those abilities. The exam also revealed motor tone was good bilaterally with good, active motion, strength was 5/5 in all extremities, reflexes were normal, there were no neurological deficits, and her walking was normal but slow. Dr. Nareddy opined that in addition to occasional lifting and carrying of five pounds, Plaintiff could engage in walking for two hours, standing for three to four hours, and unrestricted sitting. The diagnosis was chronic asthma with exacerbations at least once every two weeks, and bilateral severe degenerative joint disease of both knees. (Tr. 138-39.)

Plaintiff has not identified any evidence in the record of more frequent and severe asthma episodes than those described by the ALJ.

Because the evidence of the extent of Plaintiff's limitations from her knee condition rested in significant part on Plaintiff's subjective responses, and further because, as is discussed below, the ALJ rejected Plaintiff's credibility with respect to subjective complaints pursuant to legally correct standards and with the support of substantial evidence, the Court concludes that substantial evidence supported the ALJ's rejection

of the five-pound limitation. It is established that an ALJ may

disregard a treating physician's opinion that is controverted by

other opinions only by setting forth specific, legitimate reasons

for doing so that are based on substantial evidence in the

record. Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989).

This burden is met by stating a detailed and thorough summary of

the facts and conflicting clinical evidence, stating the

interpretation of the evidence, and making findings. Cotton v.

Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). However, if the

medical opinion of a claimant's treating physician is

uncontroverted, then an ALJ must present clear and convincing

specific reasons, supported by substantial evidence in the

record, for rejecting the uncontroverted medical opinion of a

claimant's treating physician. Holohan v. Massanari, 246 F.3d

1195, 1203 (9th Cir. 2001). A failure to set forth a reasoned

rationale for disregarding a particular treating physician's

findings is legal error. Cotton v. Bowen, 799 F.2d at 1408. The

medical opinion of a nontreating doctor may be relied upon

instead of that of a treating physician only if the ALJ provides

specific and legitimate reasons supported by substantial evidence

in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th

Cir. 2001) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

1995)). The contradictory opinion of a nontreating but examining

physician constitutes substantial evidence, and may be relied

upon instead of that of a treating physician, where it is based

on independent clinical findings that differ from those of the

treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th

Cir. 1995). The opinion of a nontreating, nonexamining physician

can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. <u>Andrews v. Shalala</u>, 53 F.3d at 1041.

Here, the ALJ gave specific and legitimate reasons for rejecting the opinion of Dr. Nareddy as to the lifting limitation. Further, substantial evidence supports the ALJ's conclusion that Plaintiff could lift ten pounds occasionally and up to ten pounds frequently. As the ALJ noted, Plaintiff herself testified that she could lift fifteen pounds. (Tr. 25, 279, 284-85.) The ALJ expressly gave "very substantial weight" (Tr. 24) to the opinions of the state agency analyst and reviewing medical consultant that Plaintiff could perform sedentary work with some limitation in the use of her lower extremities for pushing, pulling, and standing or walking on uneven terrain, and with pulmonary precautions. (Tr. 24 (citing in turn to Tr. 140-147, 211-13).) Dr. Peery, a state agency physician, opined in May 2002 that Plaintiff could occasionally lift ten pounds and frequently lift less than ten pounds (Tr. 141, 140-47.) Dr. Carmen Lopez affirmed that opinion in December 2002 and opined that Plaintiff could perform sedentary work[2] with postural limitations and asthma precautions. (Tr. 211-13.)

The ALJ's rejection of the opinion of Plaintiff's treating doctors (Kuo and perhaps Dizon) that she suffered disabling

---

[2]Sedentary work involves lifting no more than ten pounds. 20 C.F.R. § 416.967(a).

fibromyalgia, asthma, and knee conditions (Tr. 21-22, 24) was
also accompanied by reasons that were not only specific and
legitimate, but were also clear and convincing. The ALJ expressly
accorded "[s]ome weight" to Dr. Kuo's June 2003 evaluation of
Plaintiff's RFC as somewhere between light and sedentary with
moderate manipulative limitations. (Tr. 23, 237-40.) However, the
ALJ noted that he had sought further information about the
assessment because it was on a fill-in-the-blank, check-the-
blocks form, and lacked bases, such as signs and test results,
and indications of whether the limitations were based on the
claimant's subjective complaints or on objective findings or
observation; it was internally inconsistent in that it limited
fine fingering based on an impairment of arthroscopy and
chondromalacia that affected only Plaintiff's knees or ankle; and
the limitations regarding exposure to dust, fumes, and chemicals
were ambiguous. (Tr. 23.) In response to the ALJ's requests for
information (Tr. 23-24) regarding Kuo's treatment history of
Plaintiff and status as an acceptable medical source, and for
specific limitations, onset date for restrictions, bases for such
choices, and duration, the ALJ received an affidavit prepared by
Plaintiff's counsel that bore a signature line for Dr. Kuo but
was signed by a Dr. Dizon, the clinic director; the affidavit did
not indicate whether Dr. Dizon ever saw Plaintiff, was part of
Plaintiff's treatment team, or the extent of consultation among
team members. (Tr. 24, 241.) The affidavit indicated that Dr. Kuo
was part of a team and had seen Plaintiff about twice since 2002;
clinical "exam" had demonstrated tender points, occasional
swelling, decreased motion, and subjective pain and numbness,

which had been treated with medication and bracing. (Tr. 241.)

The reasons stated by the ALJ for not placing greater weight on the opinion of Dr. Kuo or Dr. Dizon included the brief treatment relationship (two times in two years); failure to cite specific objective findings in support, such as the precise number of trigger points present; and vague references to supporting bases for manipulative limitations. Further, the ALJ stated:

> Exhibit 11F [Tr. 241] expressly cites "decreased motion and subjective pain" as part of the basis for the opinions therein; however, I am inclined to give little weight to the claimant's subjective complaints in light of her poor credibility, as discussed below (*Brawner v. Secretary*, 839 F.2d 432, 434 (9th Cir. 1988)).

(Tr. 24.)

These reasons are legally sufficient. A conclusional opinion that is unsubstantiated by relevant medical documentation may be rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995). The fact that an opinion is based primarily on the patient's subjective complaints may be properly considered. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Where a treating source's opinion is based largely on the Plaintiff's own subjective description of his or her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989). It is permissible for an ALJ to prefer an opinion supported by specific clinical findings and an explanation thereof over a check-off type of form lacking an explanation of the basis for the conclusions. Crane v. Shalala, 76 F.3d 251, 253

1  (9th Cir. 1996) (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 501 (9th

2  Cir. 1983)); <u>see</u> <u>Batson v. Commissioner of the Social Security</u>

3  <u>Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).It is

4  appropriate for an ALJ to rely on an absence of a longitudinal

5  history in discounting an expert's opinion. <u>Cansio v. Shalala</u>,

6  833 F.Supp. 764, 768 (C.D.CA 1993).

7      Although Plaintiff argues that the ALJ misapplied the

8  treating physician rule and states that the ALJ is charged with

9  the specific duty of attempting to contact the treating doctor

10 for clarification of an opinion, Plaintiff does not state exactly

11 what doctor's opinion needed to be clarified, and does not

12 identify a treating physician in this context (Op. Brief p. 6).

13 To the extent that Plaintiff is attempting to state an argument,

14 the argument is so undeveloped that it is incapable of

15 assessment. The Court is thus unable to consider Plaintiff's

16 argument and will not do so.

17      Plaintiff then cites to page 42 of the administrative

18 transcript and mentions the opinion of treating physician, Dr.

19 Hayes. Page 42 is part of the decision of ALJ Richard C. Goodwin,

20 rendered on January 8, 2000, with respect to Plaintiff's previous

21 application of March 1999. (Tr. 38-45.) Further, as Defendant

22 notes, the opinion of Dr. Hayes was a previous opinion and had

23 already been considered in the previous decision. The Court thus

24 finds no merit to Plaintiff's contention regarding Dr. Hayes.

25      Plaintiff complains of the ALJ's determination that

26 Plaintiff could stand and/or walk for four hours instead of two;

27 Plaintiff asserts that there is no explanation of why this was

28 done and why the ALJ did not "present" (Op. Brief p. 7) all the

postural limits, such as bending. Plaintiff again cites to page 42 of the administrative transcript, which consists of the prior decision, a decision not under review in this proceeding. The Court thus does not reach this contention but notes that with respect to the RFC adopted by the ALJ whose decision is presently under review, the ALJ found that Plaintiff could stand or walk two hours in an eight-hour day, and this was supported by substantial evidence in the form of the credited opinions of the state agency physicians (at least two hours [Tr. 141] and four hours [Tr. 211, 213]), Dr. Nareddy, Plaintiff's surgeon, Dr. Kwock, and UMC and related clinics (Tr. 23, 24), under whose care Plaintiff had her left knee arthroscopically surveyed in August 2000 with a diagnosis of no instability but widespread chondromalicic changes of the lateral tibial plateau resulting in softening of the base of the knee joint, and prescription of knee stabilizers.

In summary, the Court concludes that the ALJ's determinations were made according to correct legal standards and were based on substantial evidence in the record.

IV. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to give adequate reasons for rejecting Plaintiff's credibility.

The ALJ noted Plaintiff's ability, as reflected in her testimony at the hearing, to engage in vocational training in light clerical work three years previously forty hours a week for three weeks. He also recited Plaintiff's assertions that she had asthma and chronic pain in both knees, although only one had surgery; wore a brace with metal sides on her left knee for

24

support and a sleeve brace on her right knee; used a splint on her wrist and a device below her left elbow because of inflammation; could lift up to fifteen pounds,[3] sit for an hour, and stand or walk one to one and one-half hours; had problems grasping with her right hand and could use it for fifteen minutes only before resting it for thirty minutes; her left ankle swelled and the toe muscles cramped; and she needed to elevate her leg and ice her foot twice daily for thirty minutes at a time. (Tr. 25.)

_____The ALJ then noted Plaintiff's daily activities, including living alone; feeding and cleaning up after her dogs outside; simple food preparation daily and cooking meals twice a week; picking up the house twice a day; doing laundry every three or four days; sweeping, mopping, dusting, and ironing weekly; and driving daily to the store, to doctor's appointments, or to check up on her ill sister. (Tr. 25.)

The ALJ then concluded that Plaintiff's impairments were not as limiting as Plaintiff's alleged because 1) her admitted daily activities were consistent with a capacity for at least sedentary exertion; 2) Plaintiff had been prescribed only anti-inflammatory medications for treatment of her chronic knee pain, which suggested that her pain complaints were not as severe as alleged; 3) ankle pain from a sprain in May 2003 would not usually result in any permanent impairment; 4) Plaintiff's ability to drive a car on a daily basis, sweep, mop, and lift wet clothes out of the

---

[3] At one point Plaintiff testified that she could lift fifty pounds, but upon prompting by her attorney, she explained that she could not do so on a sustained basis. (Tr. 25, 284-85.)

washing machine strongly suggested that Plaintiff could grip with her right hand longer than fifteen minutes; and 5) Plaintiff had a poor work history, which lessened her credibility. (Tr. 25.)

Plaintiff does not dispute the ALJ's recitation of Plaintiff's subjective complaints. Plaintiff argues that portions of the record generally support Plaintiff's subjective claims, citing to pages 96 through 119 of the transcript, consisting of Plaintiff's own disability report. (Op. Brief p. 7.)

However, the existence and severity of a person's reaction to a physical ailment, such as the existence and severity of pain, are subjective phenomena, the extent of which cannot be objectively measured. _Byrnes v. Shalala_, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. _Lester v. Chater_, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. _Id._; _Smolen v. Chater_, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. _Lester v. Chater_, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the

record and must be sufficiently specific to allow a reviewing

court to conclude that the adjudicator rejected the claimant's

testimony on permissible grounds and did not arbitrarily

discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d

341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir.

1995); see 20 C.F.R. § 404.1529(c) [disability] and 20 C.F.R. §

416.929(c) [supplemental security income].

Social Security Ruling 96-7p directs the adjudicator to

consider not only objective medical evidence of signs, laboratory

findings, and medical opinions, but also the following factors

when assessing the credibility of an individual's statements:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity
>    of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and adverse
>    side effects of any medication for pain or other
>    symptoms;
> 5. Treatment, other than medication, for relief of
>    pain or other symptoms;
> 6. Any measures other than treatment used by the
>    individual to relieve the pain or other symptoms; and
> 7. Any other factors concerning the individual's
>    functional limitations and restrictions due to
>    pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

The ALJ here identified Plaintiff's subjective complaints.

In rejecting them, he relied on reasons that were clear and

convincing, including Plaintiff's daily activities, whether her

treatment was conservative, and lack of objective medical

findings. Soc. Sec. Ruling 96-7p; 20 C.F.R. §

416.929(c)(4)(1)(vii); Smolen v. Chater, 80 F.3d 1273, 1284 (9th

Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991).

A claimant's ability to engage in activities of daily living to

1  the extent that he or she spends a substantial part of his day

2  engaged in pursuits involving the performance of physical

3  functions that are transferable to the work setting is relevant;

4  a specific finding as to this fact may be sufficient to discredit

5  a claimant's allegations. <u>Morgan v. Commissioner of Social Sec.</u>

6  <u>Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999); <u>Thomas v. Barnhart</u>,

7  278 F.3d 947, 959 (9th Cir. 2002). Attendance at school or

8  efforts to find employment may be considered, <u>Gay v. Sullivan</u>,

9  986 F.2d 1336, 1339 (10th Cir. 1993). A claimant's extremely poor

10 work history shows that she has little propensity to work and

11 negatively affects her credibility regarding her inability to

12 work. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

13     Plaintiff admitted that she had not worked in the past

14 fifteen years. (Tr. 98.) Plaintiff does not demonstrate any

15 evidentiary insufficiency with respect to the evidentiary basis

16 for the ALJ's conclusions. The Court concludes that in the

17 present case, although there might have been factors supporting

18 Plaintiff's credibility, the ALJ articulated clear and convincing

19 reasons, supported by substantial evidence, for discrediting

20 Plaintiff's subjective complaints. <u>Cf.</u> <u>Batson v. Commissioner of</u>

21 <u>the Social Security Administration</u>, 359 F.3d 1190, 1196 (9th Cir.

22 2004).

23                              <u>DISPOSITION</u>

24     Based on the foregoing, the Court concludes that the ALJ's

25 decision was supported by substantial evidence in the record as a

26 whole and was based on proper legal standards.

27     Accordingly, the Court AFFIRMS the administrative decision

28 of the Defendant Commissioner of Social Security and DENIES

Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff Debra Ray.

IT IS SO ORDERED.

**Dated:    January 11, 2007                      /s/ Sandra M. Snyder**
icido3                                 UNITED STATES MAGISTRATE JUDGE